118 T.C. No. 31

UNITED STATES TAX COURT

GWENDOLYN A. EWING, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1940-01.                      Filed May 31, 2002.

        P and H filed a joint return.  A portion of the
tax shown on the return was not paid.  R has not
asserted a deficiency against P or H.  P submitted to R
a request for relief from joint and several liability
under sec. 6015, I.R.C.  R mailed a notice of
determination denying P relief under sec. 6015(b), (c),
and (f), I.R.C.  The notice of determination was not
mailed to P's last known address.  P actually received
the notice of determination by the 88th day after the
notice was mailed.  The envelope containing P's
petition was postmarked 92 days after the mailing of
the notice of determination.  The petition was received
and filed 99 days after the date R mailed the notice of
determination.  The petition was filed more than 6
months after P submitted her request for relief to R.

        <u>Held</u>:  We have jurisdiction to determine whether P
is entitled to equitable relief under sec. 6015(f),
I.R.C., regarding the underpayment of tax shown on P's
joint return.

     <u>Held</u>, <u>further</u>:  P's petition was timely filed under sec. 6015(e)(1)(A), I.R.C.  In accordance with sec. 6015(e)(1)(A), I.R.C., P's petition was filed more than 6 months after the date she submitted her request for relief to R.  R failed to mail his notice of determination to P's last known address pursuant to sec. 6015(e)(1)(A), I.R.C.  The misaddressed notice of determination prejudiced P's ability to file her petition within 90 days after the mailing of R's notice of determination.

<u>Karen L. Hawkins</u>, for petitioner.

<u>Thomas M. Rohall</u>, for respondent.

OPINION

     RUWE, <u>Judge</u>:  This case is before the Court on respondent's Motion to Dismiss for Lack of Jurisdiction.  Respondent's motion is based on the ground that the petition was not timely filed.  We held a hearing on respondent's motion during which we raised sua sponte the issue of whether we lack jurisdiction under section 6015(e)[1] to review respondent's denial of equitable relief pursuant to section 6015(f) where no deficiency has been asserted.

     The Tax Court may exercise jurisdiction only to the extent authorized by Congress.  <u>Fernandez v. Commissioner</u>, 114 T.C. 324,

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code currently in effect, and all Rule references are to the Tax Court Rules of Practice and Procedure.

328 (2000); Gati v. Commissioner, 113 T.C. 132, 133 (1999).[2] Whether this Court has jurisdiction is fundamental and may be raised by a party or on the Court's own motion. Fernandez v. Commissioner, supra at 328; Naftel v. Commissioner, 85 T.C. 527, 530 (1985).

## Background

Petitioner and her husband filed a joint tax return for 1995. They reported tax due on their return but did not pay the full amount reported. Respondent has not asserted a deficiency against either petitioner or her husband for 1995.

On February 2, 1999, petitioner filed a Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), requesting "equitable relief" for a portion of the amount of the unpaid tax liability shown on the 1995 joint return. On October 31, 2000, respondent mailed a Notice of Determination Concerning Relief From Joint and Several Liability Under Internal Revenue Code Section 6015 (notice of determination). In the notice of determination, respondent listed the type of relief requested as relief under section 6015(b), (c), and (f). Respondent determined that petitioner was

---

[2]The Tax Court, like all Federal courts, is a court of limited jurisdiction. Flight Attendants Against UAL Offset v. Commissioner, 165 F.3d 572, 578 (7th Cir. 1999); see also Estate of Wenner v. Commissioner, 116 T.C. 284, 286 (2001).

entitled to "no relief from tax under section 6015" because petitioner had knowledge of the liability and was still married and living with her husband. The notice of determination was not sent to petitioner's last known address.

Petitioner filed a petition to this Court pursuant to section 6015(e) seeking review of respondent's denial of relief from joint and several liability. The petition was received and filed on February 7, 2001, 99 days after the date respondent mailed the notice of determination. The envelope containing the petition was postmarked January 31, 2001, 92 days after the date respondent mailed the notice of determination. The date shown on the petition was January 27, 2001, 88 days after the date respondent mailed the notice of determination.

## Discussion

Under present law, there are three primary jurisdictional bases upon which this Court may review a claim for relief from joint and several liability. First, a claim may be raised as an affirmative defense in a petition for redetermination of a deficiency filed pursuant to section 6213(a). Butler v. Commissioner, 114 T.C. 276, 287-288 (2000). A second basis upon which we may exercise jurisdiction is contained in section 6015(e). This provision allows a spouse who has requested relief to petition the Commissioner's denial of relief, or to petition the Commissioner's failure to make a timely determination. Such

cases are referred to as "stand alone" cases, in that they are independent of any deficiency proceeding. Fernandez v. Commissioner, supra at 329. A third situation where we may exercise jurisdiction to determine relief from joint and several liability is where the issue is properly raised in a collection proceeding under sections 6320 and 6330.[3] In the instant case, petitioner's claim for relief from joint and several liability was made in a "stand alone" petition filed pursuant to section 6015(e).

I. Election Requirement in Section 6015(e)

In Fernandez v. Commissioner, supra at 330, we interpreted the then existing prefatory language in section 6015(e)(1)--"in the case of an individual who elects to have subsection (b) or (c) apply"--to encompass a procedural requirement applicable to all joint filers seeking relief from joint liability. We noted that section 6015(f) provides an additional opportunity for relief to those taxpayers who do not otherwise meet the requirements of subsections (b) or (c). Fernandez v. Commissioner, supra at 330. Petitioner is seeking relief under section 6015(f). Section 6015(f) permits relief from joint and several liability where "it is inequitable to hold the individual

---

[3]Additionally, we have held that we may address a claim for relief from joint and several liability pleaded as an affirmative defense in a matter properly before this Court under sec. 6404 (relating to the Commissioner's determination not to abate interest). Estate of Wenner v. Commissioner, supra at 288.

liable <u>for any unpaid tax or any deficiency</u> (or any portion of either)".  (Emphasis added.)  Congress did not limit equitable relief under section 6015(f) to situations where a deficiency has been asserted.  H. Conf. Rept. 105-599, at 254-255, 1998-3 C.B. 747, 1008-1009.  However, a prerequisite for relief under section 6015(f) is that relief is not available under section 6015(b) or (c), which deal with deficiency situations.  Sec. 6015(f)(2); <u>Fernandez v. Commissioner</u>, 114 T.C. at 330-331.  Thus, in every case where the taxpayer submits a request to the Commissioner for relief under section 6015, and such request includes a claim for relief under section 6015(f), the Commissioner must first examine both subsections (b) and (c) to determine whether relief is available under those subsections before determining whether relief is available under section 6015(f).  Respondent therefore treated petitioner's request for relief under section 6015 as an election under section 6015(b), (c), and (f).[4]

---

[4]Respondent's position is that our holding in <u>Fernandez v. Commissioner</u>, 114 T.C. 324, 331 (2000), requiring an election under sec. 6015(b) or (c), is satisfied by the statutory requirement that an individual must fail to qualify for relief under sec. 6015(b) and (c) as a prerequisite to being eligible for relief under sec. 6015(f).  Respondent recognizes that taxpayers who have correctly reported but not paid their tax liabilities can request relief under either sec. 6015(b) or (c) despite the fact that they do not qualify for relief under those subsections.

II.  Jurisdiction Over Claims Involving Underpayment of Tax

The first issue for decision is whether this Court has jurisdiction under section 6015(e) to review the denial of a request for relief from joint and several liability where no deficiency has been asserted.  Both petitioner and respondent agree that we have such jurisdiction.

A.   Background of Section 6015

In order to decide this jurisdictional issue, it is necessary to review the evolution of the pertinent statutory provisions and caselaw.  Congress enacted section 6015 in 1998 as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 734.[5]  As originally enacted, section 6015(e) provided, in pertinent part:

---

[5]Sec. 6015 replaced former sec. 6013(e).  Sec. 6013(e) provided that a spouse could be relieved of tax liability if the spouse proved:  (1) A joint return was filed; (2) the return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) under the circumstances it would be inequitable to hold the spouse seeking relief liable for the substantial understatement.  Relief under sec. 6013(e) was difficult for many taxpayers to obtain.  In 1998, Congress repealed sec. 6013(e) and enacted sec. 6015 in order to make relief from joint and several liability more accessible.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 734; H. Conf. Rept. 105-599, at 249 (1998), 1998-3 C.B. 747, 1003.

SEC. 6015(e). Petition for Review by Tax Court.--

(1) In general.--In the case of an individual who elects to have subsection (b) or (c) apply--

(A) In general.--The individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section * * *  [Emphasis added.]

Section 6015(f) provides:

SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if–

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),[6]

the Secretary may relieve such individual of such liability.  [Emphasis added.]

In two cases decided while the above-quoted statutory language of section 6015(e) was still in effect, we held that this Court had jurisdiction to review denials of requests for relief from joint and several liability pursuant to section 6015(f) in both deficiency and "stand alone" proceedings.  In Butler v. Commissioner, 114 T.C. 276 (2000), we addressed the issue of whether we have authority to review a denial of relief

---

[6]Subsecs. (b) and (c) of sec. 6015 provide separate grounds for relief from joint and several liability attributable to understatements of tax on returns or any "deficiencies".  As previously noted, the return in issue did not understate the tax, and there was no "deficiency".

under section 6015(f) where a claim for relief from joint and several liability was raised as an affirmative defense in a petition for redetermination of a deficiency filed pursuant to section 6213(a). We interpreted the term "under this section" in section 6015(e)(1)(A) to include all subsections of section 6015. Butler v. Commissioner, supra at 289-290. We found nothing in section 6015(e) that precluded our review of the Commissioner's denial of equitable relief pursuant to section 6015(f) where the taxpayer makes an election for relief pursuant to section 6015(b) or (c). Id. Additionally, we rejected the Commissioner's argument that his authority to grant equitable relief is committed to agency discretion because we found that the circumstances allowing action to be committed solely to agency discretion were not present. Id. at 291.

In Fernandez v. Commissioner, supra, we addressed the issue of whether we have authority to review a denial of relief under section 6015(f) where a "stand alone" petition is filed pursuant to section 6015(e). We described section 6015(f) as follows:

> Section 6015(f) provides that the Commissioner may relieve an individual of liability if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency (or portion thereof) * * * [Id. at 332; emphasis added.]

As we did in Butler v. Commissioner, supra, we expressed the view that Congress intended the term "under this section" in section

6015(e)(1)(A) to include all subsections of section 6015 in their entirety.  Fernandez v. Commissioner, supra at 331.[7]

Our opinions in Fernandez v. Commissioner, supra, and Butler v. Commissioner, supra, examined the legislative history of section 6015 and concluded that it supported our authority to review the application of section 6015(f).  Although Fernandez v. Commissioner, supra, and Butler v. Commissioner, supra, both involved deficiencies, we did not limit our holding to deficiency situations or otherwise indicate that this Court lacks jurisdiction in a nondeficiency situation involving a claim for relief from liability for an underpayment of tax shown on a joint return.  As we pointed out in Butler v. Commissioner, supra at 290, the House report states that "The bill specifically provides that the Tax Court has jurisdiction to review any denial (or failure to rule) by the Secretary regarding an application for innocent spouse relief", and the Senate report provides that "The Tax Court has jurisdiction of disputes arising from the separate liability election."  The proposed Senate amendment applied the separate liability election to situations involving deficiency determinations and situations where the tax shown on the return was not paid with the return.  S. Rept. 105-174, at 57-58 (1998), 1998-3 C.B. 537, 593-594.  The Senate amendment clearly provided

_____

[7]The Commissioner has acquiesced in our decision in Fernandez v. Commissioner, supra, in 2000-23 I.R.B. 002.

for Tax Court review in situations involving both deficiencies and underpayments of tax shown on the return.  Id. at 56, 1998-3 C.B. at 592.  The Senate amendment also added an "Equitable Relief" provision similar to what is now contained in section 6015(f), providing equitable relief "for any unpaid tax or any deficiency".  144 Cong. Rec. S4577 (daily ed. May 8, 1998).  The Senate amendment also provided for Tax Court jurisdiction "In the case of an individual who elects to have this section [section 6015] apply".  Id.  The conference agreement did not include the portion of the Senate amendment applying the separate liability election in situations where the tax shown on the return was not paid with the return.  However, the conference agreement added section 6015(f) which, like the Senate amendment, allows equitable relief for unpaid tax shown on the return.  H. Conf. Rept. 105-599, at 254 (1998), 1998-3 C.B. 755, 1008.  The conference agreement followed the Senate amendment in establishing Tax Court jurisdiction in this area.  Id.

The following language contained in the conference report supports our view that, in enacting section 6015, Congress intended for this Court to have jurisdiction over situations involving any claim for relief from joint and several liability, including nondeficiency situations where an individual is seeking relief only for an underpayment of tax shown on a joint return:

The conference agreement follows the Senate amendment with respect to deficiencies of a taxpayer who is no longer married to, is legally separated from, or has been living apart for at least 12 months from the person with whom the taxpayer originally filed the joint return. The conference agreement also includes the provision in the House bill expanding the circumstances in which innocent spouse relief is available. Taxpayers, whether or not eligible to make the separate liability election, may be granted innocent spouse relief where appropriate. In addition, the conference agreement authorizes the Secretary to provide equitable relief in appropriate situations. The conference agreement follows the House bill and the Senate amendment in establishing jurisdiction in the Tax Court over disputes arising in this area. [H. Conf. Rept. 105-599, supra at 251, 1998-3 C.B. at 1005; emphasis added.]

The language in the conference report indicates that the reference to disputes arising in "this area" was intended to encompass claims for relief arising under section 6015(b), (c), and (f). The reference to our jurisdiction comes directly after the conference report discussed the Senate amendment (relating to section 6015(c)), the House bill (relating to section 6015(b)), and the conference agreement's new provision authorizing equitable relief in appropriate situations (relating to section 6015(f)). The conference report then states that it follows the House bill and Senate amendment in establishing jurisdiction in this Court over disputes arising in "this area".[8] Additionally,

---

[8]The General Explanation of Tax Legislation Enacted in 1998 prepared by the Staff of the Joint Committee on Taxation states:

The provision establishes three procedures for limiting the portion of a joint and several liability

(continued...)

the conference report provides that "The conference agreement follows the House Bill and the Senate amendment with respect to procedural rules, including the jurisdiction of the Tax Court to review matters relating to this provision."  H. Conf. Rept. 105-599, supra at 255, 1998-3 C.B. at 1009 (emphasis added).  The references to "this area" and "this provision" reflect Congress's intent that our jurisdiction extend to claims arising under all three subsections of section 6015, including claims for relief in nondeficiency situations.  Had Congress intended to limit our jurisdiction to deficiency situations only, presumably it would not have used such broad terms as "this area" and "this provision" to describe the scope of our authority to review claims for relief from joint and several liability.  See, e.g., Fernandez v. Commissioner, 114 T.C. at 331 (interpreting reference to "this section" in section 6015(e)(1)(A) to encompass

---

[8](...continued)
that is a spouse's (or former spouse's) responsibility. First, the provision establishes a separate liability election for a taxpayer who is no longer married to, is legally separated from, or has been living apart at all times for at least 12 months from the person with whom the taxpayer originally filed the joint return. Second, the provision expands the circumstances in which innocent spouse relief similar to that available under prior law is available.  Third, the provision authorizes the Secretary to provide equitable relief in appropriate situations.  The provision also establishes jurisdiction in the Tax Court over disputes arising in this area.  [Staff of Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted in 1998, at 67 (J. Comm. Print 1998); emphasis added.]

all subsections of section 6015); <u>Butler v. Commissioner</u>, 114

T.C. at 290 (same); <u>Woodral v. Commissioner</u>, 112 T.C. 19, 22-23

(1999) (interpreting reference to "this section" in section

6404(g) to encompass all subsections of section 6404).

Accordingly, we conclude that, in enacting section 6015, Congress

did not intend to limit our authority to review claims for relief

from joint and several liability to deficiency situations.

    B.    <u>Amendment of Section 6015(e)</u>

Subsequent to our opinions in <u>Fernandez v. Commissioner</u>,

<u>supra</u>, and <u>Butler v. Commissioner</u>, <u>supra</u>, Congress amended

section 6015(e) effective on December 21, 2000.  Consolidated

Appropriations Act, 2001 (Consolidated Appropriations Act, 2001),

Pub. L. 106-554, app. G, sec. 313, 114 Stat. 2763, 2763A-641-643.

As a result, section 6015(e) currently provides, in pertinent

part:

> SEC. 6015(e).  Petition for Review by Tax Court.--
>
> (1) In general.--In the case of an individual
> <u>against whom a deficiency has been asserted</u> and who
> elects to have subsection (b) or (c) apply--
>
>> (A) In general.--In addition to any
>> other remedy provided by law, the individual
>> may petition the Tax Court (and the Tax Court
>> shall have jurisdiction) to determine the
>> appropriate relief available to the
>> individual <u>under this section</u> * * *
>> [Emphasis added.]

The petition in the instant case was filed after the effective

date of this provision.  The issue we must decide is whether the

amendment to section 6015(e) by the Consolidated Appropriations Act, 2001, presents a new requirement that a deficiency must be asserted before this Court has jurisdiction to review respondent's denial of equitable relief pursuant to section 6015(f) in a "stand alone" proceeding.

In interpreting section 6015(e), our purpose is to give effect to Congress's intent.  Fernandez v. Commissioner, supra at 329.  We begin with the statutory language, and we interpret that language with reference to the legislative history primarily to learn the purpose of the statute and to resolve any ambiguity in the words contained in the language.  Allen v. Commissioner, 118 T.C. 1, 7 (2002) (and cases cited therein).  Usually, the plain meaning of the statutory language is conclusive.  United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989); Woodral v. Commissioner, supra at 23.  If the statute is ambiguous or silent, we may look to the statute's legislative history to determine congressional intent.  Burlington N. R.R. v. Okla. Tax Commn., 481 U.S. 454, 461 (1987); Fernandez v. Commissioner, supra at 329-330.  Finally, because the changes to the relief from joint and several liability rules "were designed to correct perceived deficiencies and inequities in the prior version" of the rules, this curative legislation should be construed liberally to effectuate its remedial purpose.  Flores v. United States, 51 Fed. Cl. 49, 53 (2001) (citing Tcherepnin v. Knight,

389 U.S. 332, 336 (1967); Piedmont & N. Ry. Co. v. ICC, 286 U.S. 299, 311-312 (1932)).

Our interpretation of section 6015(e) concerns the new language "against whom a deficiency has been asserted". However, section 6015(e)(1)(A) still contains the provision giving this Court jurisdiction "to determine the appropriate relief available to the individual under this section" (emphasis added), which, as previously explained, we have held gives us jurisdiction over the propriety of equitable relief under section 6015(f). Equitable relief under section 6015(f) is, and always has been, available in nondeficiency situations. Under these circumstances, the amendment to section 6015(e)(1) referring to situations where "a deficiency has been asserted" and the retention of the language in that same section giving us jurisdiction over "the appropriate relief available to the individual under this section" creates an ambiguity. Therefore, it is appropriate to consult the legislative history of the amendment made by the Consolidated Appropriations Act, 2001.

The conference report accompanying the Consolidated Appropriations Act, 2001, provides the following discussion regarding the amendment of section 6015(e):

> Timing of request for relief.--Confusion currently exists as to the appropriate point at which a request for innocent spouse relief should be made by the taxpayer and considered by the IRS. Some have read the statute to prohibit consideration by the IRS of requests for relief until after an assessment has been

made, i.e., after the examination has been concluded, and if challenged, judicially determined. Others have read the statute to permit claims for relief from deficiencies to be made upon the filing of the return before any preliminary determination as to whether a deficiency exists or whether the return will be examined. The consideration of innocent spouse relief requires that the IRS focus on the particular items causing a deficiency; until such items are identified, the IRS cannot consider these claims. Congress did not intend that taxpayers be prohibited from seeking innocent spouse relief until after an assessment has been made; Congress intended the proper time to raise and have the IRS consider a claim to be at the same point where a deficiency is being considered and asserted by the IRS. This is the least disruptive for both the taxpayer and the IRS since it allows both to focus on the innocent spouse issue while also focusing on the items that might cause a deficiency. It also permits every issue, including the innocent spouse issue, to be resolved in single administrative and judicial process. The bill clarifies the intended time by permitting the election under (b) and (c) to be made at any point after a deficiency has been asserted by the IRS. A deficiency is considered to have been asserted by the IRS at the time the IRS states that additional taxes may be owed. Most commonly, this occurs during the Examination process. It does not require an assessment to have been made, nor does it require the exhaustion of administrative remedies in order for a taxpayer to be permitted to request innocent spouse relief. * * * [H. Conf. Rept. 106-1033, at 1023 (2000); see also Vetrano v. Commissioner, 116 T.C. 272, 279 (2001).]

The conference report indicates that the language "against whom a deficiency has been asserted" was inserted into section 6015(e) to clarify the proper time for making a request to the Commissioner for relief from joint and several liability for tax that may have been underreported on the return. Congress wanted to prevent taxpayers from submitting premature requests to the Commissioner for relief from potential deficiencies before the

Commissioner had asserted that additional taxes were owed.
Congress also wanted to make it clear that a taxpayer does not
have to wait until after an assessment has been made before
submitting a request to the Commissioner for relief under section
6015. Overall, the legislative history indicates that Congress
was concerned with the proper timing of a request for relief for
underreported tax and intended that taxpayers not be allowed to
submit a request to the Commissioner regarding underreported tax
until after the issue was raised by the IRS.[9]

There is nothing in the legislative history indicating that
the amendment of section 6015(e) by the Consolidated
Appropriations Act, 2001, was intended to eliminate our
jurisdiction regarding claims for equitable relief under section
6015(f) over which we previously had jurisdiction. The stated
purpose for inserting the language "against whom a deficiency has
been asserted" into section 6015(e) was to clarify the proper

---

[9]We note that sec. 1.6015-5(b)(5), Proposed Income Tax
Regs., 66 Fed. Reg. 3888, 3902 (Jan. 17, 2001), also expresses
the view that the Commissioner will not consider premature claims
for relief under sec. 6015(b), (c), and (f). The proposed
regulation provides, in pertinent part:

> (5) Premature requests for relief. The Secretary
> will not consider premature claims for relief under
> §1.6015-2, §1.6015-3, or §1.6015-4. A premature claim
> is a claim for relief that is filed for a tax year
> prior to the receipt of a notification of an audit or a
> letter or notice from the Secretary indicating that
> there may be an outstanding liability with regard to
> that year. * * *

time for a taxpayer to submit a request to the Commissioner for relief under section 6015 regarding underreported taxes.[10]  We conclude that the amendment of section 6015(e) does not preclude our jurisdiction to review the denial of equitable relief under section 6015(f) where a deficiency has not been asserted.

In the instant case, petitioner filed a claim for relief from joint and several liability for an amount of tax correctly shown on the return but not paid with the return.  Because respondent has not challenged the tax reported on the return, no deficiency has been asserted.  In this situation, petitioner may be entitled to relief under section 6015(f) because subsection (f) applies where "it is inequitable to hold the individual liable for <u>any unpaid tax or</u> any deficiency".[11]  Sec. 6015(f) (emphasis added); <u>Fernandez v. Commissioner</u>, 114 T.C. at 332; H.

---

[10]Sec. 6015(c)(3)(B) was amended at the same time to provide that the time for electing relief was "after a deficiency for such year is asserted".  Consolidated Appropriations Act, 2001 (Consolidated Appropriations Act, 2001), Pub. L. 106-554, app. G, sec. 313, 114 Stat. 2763A-640.

[11]A request for relief from joint and several liability can be made by submitting a Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), to the Commissioner.  The instructions accompanying the Form 8857 provide that relief under sec. 6015(f) generally applies only to an underpayment of tax, or part or all of any understatement of tax that does not qualify for both sec. 6015(b) and sec. 6015(c) relief.  An underpayment is defined as "tax that is properly shown on your return but [which] has not been paid."  An understatement of tax, or deficiency, is defined as "the difference between the total amount of tax that the IRS determines should have been shown on the return, and the amount that actually was shown on the return."

Conf. Rept. 105-599, supra at 254-255, 1998-3 C.B. at 1008-1009; Rev. Proc. 2000-15, 2000-5 I.R.B. 447; see also Smith v. Commissioner, T.C. Memo. 2001-313.[12]  Because the tax was reported on the return, respondent need not issue a notice of deficiency in order to assess the tax.  Bresson v. Commissioner, 111 T.C. 172 (1998), affd. 213 F.3d 1173 (9th Cir. 2000). Respondent and petitioner are both aware that petitioner has an unpaid tax liability which is due.  In this situation, Congress's concern regarding premature requests for relief is not present because there is no dispute over the amount of tax required to be shown on the return.

C.   Conclusion

Both parties agree that petitioner is jointly and severally liable for the unpaid tax unless she is entitled to equitable relief under section 6015(f).  Respondent has treated the request as an election under section 6015(b), (c), and (f).  Both parties agree that the absence of a deficiency is no impediment to our jurisdiction in the instant case.  After examining section 6015

---

[12]In Smith v. Commissioner, T.C. Memo. 2001-313, the taxpayer filed a petition under sec. 6015 seeking relief from joint and several liability for an underpayment of tax shown on her 1987 joint tax return and a deficiency related to her 1992 joint tax return.  The Commissioner had previously granted relief under sec. 6015 for a deficiency related to the 1987 return.  We exercised our jurisdiction to review the Commissioner's denial of equitable relief under sec. 6015(f) for the underpayment of tax shown on the 1987 return and decide whether petitioner was entitled to relief from joint and several liability for the 1992 deficiency.

as originally enacted, the subsequent amendment by the Consolidated Appropriations Act, 2001, the legislative history and relevant caselaw, we agree with the parties and hold that the absence of an asserted deficiency does not deprive us of jurisdiction over petitioner's claim for equitable relief pursuant to section 6015(f).

III. Timeliness of Petition

The next issue is whether the petition was timely filed under section 6015(e). Section 6015(e)(1)(A) provides, in pertinent part, that an individual may file a petition:

> (i) at any time after the earlier of--
>
> (I) the date the Secretary mails, by certified or registered mail to the taxpayer's last known address, notice of the Secretary's final determination of relief available to the individual, or
>
> (II) the date which is 6 months after the date such election is filed with the Secretary, and
>
> (ii) not later than the close of the 90th day after the date described in clause (i)(I).[13]

---

[13]As originally enacted, sec. 6015(e)(1)(A) provided:

> (A) In general.--The individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed during the 90-day period beginning on the date on which the Secretary mails by certified or registered mail a notice to such individual of the Secretary's determination of relief available to the individual. Notwithstanding the preceding sentence, an individual may file such petition at any time after the date which

(continued...)

In the instant case, the petition was filed more than 6 months after the date petitioner submitted to respondent her request for relief under section 6015. The notice of determination was not mailed to petitioner's last known address. Thus, the petition was not filed later than the close of the 90th day after the date respondent mailed the notice of determination to petitioner's last known address. While this would seem to end the matter, respondent argues that petitioner received the notice in sufficient time to file a timely petition within 90 days and that somehow we should therefore find that the petition was filed after the 90-day period described in section 6015(e)(1)(A)(ii).

Respondent relies on the fact that the petition is dated 2 days before the 90th day after respondent mailed the notice of

---

[13](...continued)
is 6 months after the date such election is filed with the Secretary and before the close of such 90-day period.

Congress amended sec. 6015(e) effective on Dec. 21, 2000. Consolidated Appropriations Act, 2001, 114 Stat. 2763, 2763A-641-643. The conference report accompanying the Consolidated Appropriations Act, 2001, notes that under the statute as originally enacted, the time period for filing a petition under sec. 6015(e) began on the date of the determination as opposed to the day after the determination. H. Conf. Rept. 106-1033, at 1023 (2000). The report explains that the purpose of the amendment to sec. 6015(e)(1)(A) was to clarify the computation of the time period for seeking a redetermination in the Tax Court under sec. 6015(e) by conforming it to the generally applicable 90-day period to petition the Tax Court with respect to a deficiency notice. Id. The conference report does not indicate why the reference to the taxpayer's last known address was added to sec. 6015(e)(1)(A).

determination.  Respondent points out that the petition would have been timely if mailed on the date shown on the petition. Respondent notes that cases involving a notice of deficiency have recognized that actual receipt of the notice without prejudicial delay is sufficient for the notice to be effective even though not sent to the taxpayer's last known address.  Assuming that this rationale could have some application in deciding when the 90-day period referred to in section 6015(e)(1)(A)(ii) begins, we find that the improperly addressed notice did result in prejudicial delay.

In a deficiency proceeding, our jurisdiction depends on the issuance of a valid notice of deficiency and a timely filed petition.  Rule 13(a), (c); Monge v. Commissioner, 93 T.C. 22, 27 (1989).  Section 6212(a) authorizes the Commissioner to send a notice of deficiency to a taxpayer by certified mail or registered mail.  The taxpayer must generally file a petition to this Court within 90 days after the date the notice of deficiency is mailed.  Sec. 6213(a).  Section 6212(b)(1) provides that it "shall be sufficient" for jurisdictional purposes if the Commissioner mails the notice of deficiency to the taxpayer at the taxpayer's last known address.  Frieling v. Commissioner, 81 T.C. 42, 52 (1983).  It is well settled that, although a deficiency notice properly mailed to a taxpayer's last known address provides the Commissioner with a "safe harbor" under

section 6212(b), an improperly addressed notice of deficiency remains valid under section 6212(a) if it is actually received in sufficient time to permit the taxpayer to file a timely petition for redetermination. Mulvania v. Commissioner, 81 T.C. 65, 67-69 (1983), affd. 769 F.2d 1376 (9th Cir. 1985).

The determination of whether a taxpayer's ability to file a timely petition has been prejudiced by an improperly addressed notice is factual in nature. Looper v. Commissioner, 73 T.C. 690, 699 (1980). In general, the cases in which we have held that an improperly addressed notice of deficiency was actually received with sufficient time to permit the taxpayer to file a timely petition for redetermination have involved receipt with at least 30 days left in the filing period. See, e.g., Mulvania v. Commissioner, supra at 68 (74 days remaining); Bowers v. Commissioner, T.C. Memo. 1991-609 (69 days remaining); Fileff v. Commissioner, T.C. Memo. 1990-452 (60 days remaining); George v. Commissioner, T.C. Memo. 1990-147 (52 days remaining); Bulakites v. Commissioner, T.C. Memo. 1998-256 (45 days remaining); Loftin v. Commissioner, T.C. Memo. 1986-322 (30 days remaining); Eger v. Commissioner, T.C. Memo. 1984-325 (30 days remaining). In a situation where a notice was actually received with only 17 days left in the filing period, we held that the taxpayer was prejudiced by the improperly addressed notice because he did not

let the notice languish and "he took responsible steps in an attempt to fulfill requisites to contest the Commissioner's determination in the Tax Court."  Looper v. Commissioner, supra at 699.

Applying this standard in the context of a notice of determination under section 6015,[14] we find that petitioner's ability to timely file the petition was prejudiced by the improperly addressed notice.  At the hearing, petitioner stated that during the relevant time period she was busy attending to her injured husband and did not know when she received the notice of determination.  The only evidence of a specific date shows that the notice was received by January 27, 2001, which was the

---

[14]While we dispose of respondent's argument by applying caselaw dealing with jurisdictional requirements under sec. 6213, we note that the statutory language in sec. 6015(e)(1)(A) is different in several respects, including the fact that sec. 6015(e)(1)(A) specifically counts the 90-day period from the date the notice of determination is mailed to the "taxpayer's last known address".  In contrast, sec. 6213 counts the 90-day filing period from the date the notice of deficiency was mailed with no reference to the date the notice was mailed to the taxpayer's last known address.

date written on the petition.[15]  This date, upon which respondent relies, was 88 days after respondent mailed the notice of determination and only 2 days prior to the last day for filing a petition.

Petitioner initiated and has diligently pursued relief from joint liability.  There is no evidence that petitioner let the notice languish or otherwise failed to take responsible steps to contest respondent's determination in this Court.  Therefore, on the basis of the evidence in the record, we find that the delay caused by the improperly addressed notice was prejudicial to petitioner's ability to timely, by January 29, 2001, file her petition.

IV.  Conclusion

We hold that the petition in the instant case was timely under section 6015(e)(1)(A) and that we have jurisdiction to determine the appropriate relief available to petitioner under

---

[15]In Sicker v. Commissioner, 815 F.2d 1400 (11th Cir. 1987), revg. and remanding an Order of this Court, the petition was dated 8 days prior to the expiration of the 90-day filing period but postmarked 1 day after expiration of the 90-day period.  The court held that receipt of a notice of deficiency with only 8 days remaining in the filing period was not sufficient time to permit the taxpayer to file a petition.  Id. at 1401 (holding that, as a matter of law, 8 days cannot be considered ample time in which to petition for redetermination).

section 6015(f) for the underpayment of tax shown on petitioner's joint return.

> An appropriate order will be
> issued denying respondent's
> motion to dismiss for lack of
> jurisdiction.

Reviewed by the Court.

WELLS, COHEN, SWIFT, GERBER, HALPERN, BEGHE, CHIECHI, and GALE, JJ., agree with this majority opinion.

THORNTON, J., dissents.

LARO, J., dissenting:  In order to seize jurisdiction over this case, the majority today takes the Court a step away from long-established principles of statutory construction by refusing to apply the plain meaning of the statute enacted by Congress. The issues at hand could and should have been resolved merely by applying the obvious plain meaning of the statute and following recent precedent.  Instead, the majority opts to rewrite the statute to achieve a practical and result-oriented decision.  In so doing, the majority abandons and cuts the mooring of strict construction, disregards precedent, and sends the Court drifting without reliable navigation hoping to find refuge in a practical result.

I have nothing against practical decisions.  Courts should strive to arrive at real world results.  But it is Congress that is empowered by our Constitution to legislate, and it is neither the responsibility nor the province of this (or any other) Court to create law deliberately and audaciously while disregarding a specific statutory scheme that Congress has prescribed. Practical results have virtue when they occur in the context of conventional statutory construction.  Result-oriented decisions such as the one reached by the majority, on the other hand, disregard plain Congressional intent and encroach on the responsibility of the legislature.  To state the obvious, there is abundant authority to dictate that a plain meaning interpretation of the statutory text is required absent

ambiguity.  See discussion infra.  The plain meaning of the statutory text at issue is not ambiguous.

My disagreement with the majority opinion focuses primarily on the opinion's misapplication of section 6015(e), the provisions of which I consider to be a clear statutory mandate from Congress.  Section 6015(e) empowers the Court to review a taxpayer's stand-alone petition challenging the Commissioner's determination as to the taxpayer's administrative claim for relief from joint liability under section 6015.  Section 6015(e) provides in relevant part:

> SEC. 6015(e).  Petition for Review by Tax Court.--
>
> (1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply-
>
> (A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed * * * [timely]

I parse the quoted text of section 6015(e) into the separate statements which Congress has carefully chosen to prescribe under the heading "Petition for Review by Tax Court".  The plain reading of each of these statements establishes the prerequisite to the Court's obtaining jurisdiction in the case of a stand-alone petition.  The majority reads these statements differently, in fact, declining to apply many of the statements in order to

reach a conclusion that the majority considers more practical than the plain meaning application that the text demands.  As explained by the majority, some of these statements either do not apply to a finding that the Court has jurisdiction over this case or are statutory surplusage.  Although in the latter regard the majority is careful not to use the term "surplusage", the majority declines to apply part of the statements asserting that the language therein must apply in all cases.  Such reasoning is akin to labeling the parts surplusage.

I summarize a plain reading of the separate statements and the majority's reading of these statements as follows:

| Statutory Text | A Plain Reading | Majority's Reading |
|---|---|---|
| In the case of an individual | | |
| | In order to acquire jurisdiction under section 6015(e), the Court must find that the petitioning taxpayer is an individual. | In order to acquire jurisdiction under section 6015(e), the Court must find that the petitioning taxpayer is an individual. |
| against whom a <u>deficiency</u> has been <u>asserted</u> | In order to acquire jurisdiction under section 6015(e), the Court must find that the Commissioner has asserted a deficiency against the petitioning individual. | In order to acquire jurisdiction under section 6015(e), the Court never need find that the Commissioner has asserted a deficiency against the petitioning individual.  This language is not a jurisdictional requirement.  When an individual |

| | | petitions the Court under section 6015(e), the Court may always decide whether the individual qualifies for relief under section 6015 as to either a deficiency or an underpayment. |
|---|---|---|
| and | | |
| who <u>elects</u> to have subsection (b) or (c) apply | In order to acquire jurisdiction under section 6015(e), the Court must find that the petitioning individual made an election under subsection (b) or (c).  As this Court stated in <u>Fernandez v. Commissioner</u>, 114 T.C. 324, 331 (2000), "before an individual may petition this court for review of innocent spouse relief, including relief under subsection (f), <u>such individual must make an election under subsections (b) and/or (c)</u>." (Emphasis added.) | In order to acquire jurisdiction under section 6015(e), the Court never need find that the petitioning individual made an election under subsection (b) or (c).  This language is surplusage in that the Commissioner must always, including where the individual has requested only equitable relief under section 6015(f), treat the individual's request as an election under subsection (b) and (c).  This treatment ipso facto meets the requirement of this language. |
| * * * the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) | In order to acquire jurisdiction under section 6015(e), the Court must find that the petitioning individual is the same individual | In order to acquire jurisdiction under section 6015(e), the Court never need find that the petitioning individual is the individual against |

against whom a deficiency was asserted and who made the election under subsection (b) or (c). The "individual" referenced in this language is the same "individual" described in the prefatory language in section 6015(e)(1).

whom a deficiency is asserted or who made an election under subsection (b) or (c). The Court has jurisdiction whenever an individual petitions the Court under section 6015(e) to decide any claim for relief under section 6015. The "individual" who may petition the Court is not necessarily the same "individual" described in the prefatory language in section 6015(e)(1).

to determine the appropriate relief available to the individual under this section if such petition is filed * * * [timely].

When the individual described in the prefatory language in section 6015(e)(1) files a timely petition with the Court under section 6015(e), and the Court therefore has jurisdiction, the Court may decide that the individual is entitled to any form of relief under section 6015.

The phrase "under this section" means that the Court may decide the appropriate relief as to any petitioning individual who files a timely petition under section 6015(e).

As I see it, the controlling fact in this case is that petitioner requested from the Commissioner solely equitable relief under section 6015(f).[1]  The majority sees it differently.

---

[1] As discussed _infra_, Congress provided in sec. 6015 three
(continued...)

The majority concludes that the Court has jurisdiction over this case because, they find, the Commissioner (1) treated petitioner's request solely for equitable relief as a request for all three types of relief under section 6015 and (2) considered whether petitioner qualified for any of those types of relief. The majority understands that the so-found Commissioner's treatment of petitioner's request is dictated by the

---

[1](...continued)

distinct types of relief from joint liability, the first in sec. 6015(b), the second in sec. 6015(c), and the third in sec. 6015(f). Congress referred to these respective types of relief as modified innocent spouse relief contained in the House bill, the separate liability election contained in the Senate amendment, and equitable relief contained in the conference agreement. The majority makes no mention of the distinction that Congress drew between these three types of relief, a distinction which, as discussed herein, has been recognized not only by Congress, but by the Joint Committee of Taxation and the Treasury Department as well. As I read the majority opinion, the Court's jurisdiction to decide this case involving solely equitable relief is found in the fact that the Senate amendment gave the Court jurisdiction over all forms of relief set forth in the amendment and "The Senate amendment * * * [included] an 'Equitable Relief' provision similar to what is now contained in section 6015(f)". Majority op. p. 11. I disagree with the majority that the Senate amendment gave the Court jurisdiction over a claim for equitable relief under sec. 6015(f) in the case of a stand-alone petition. The Senate's equitable relief provision was never adopted by the conferees. The mere fact that the Senate amendment may have been "similar" to the conferees' equitable relief provision, an assertion made by the majority but to which I disagree (but for the fact that both provisions are called "equitable relief"), does not mean that the conferees intended that their equitable relief provision, which was not contained in either the House bill or the Senate amendment, would follow the jurisdictional rules set forth in the Senate amendment. The equitable relief provision contained in sec. 6015(f) arose in conference, and the conferees never provided that the Court would have jurisdiction as to that provision in the case of a stand-alone petition.

Commissioner's belief that the "Commissioner must first examine both subsections (b) and (c) to determine whether relief is available under those subsections before determining whether relief is available under section 6015(f)". Majority op. p. 6.

The majority's understanding of the Commissioner's belief is at odds with the Treasury Department's formation of procedural rules by which the Commissioner must process requests for relief under section 6015. Specifically, following the Commissioner's consideration of petitioner's request, the Treasury Department issued proposed regulations interpreting section 6015 to the contrary of the majority's finding that the Commissioner treated petitioner's request solely for equitable relief as a claim for all three types of relief under section 6015.[2] The proposed regulations provide inconsistently with the majority's understanding that the Commissioner will not consider whether a taxpayer requesting relief solely under section 6015(f) qualifies for relief under section 6015(b) or (c). See sec. 1.6015-1(a)(2), Proposed Income Tax Regs., 66 Fed. Reg. 3894 (Jan. 17, 2001) ("If a requesting spouse seeks relief only under § 1.6015-4 [equitable relief], the Secretary may not grant relief under

---

[2] I understand that proposed regulations are not binding on this Court. Canterbury v. Commissioner, 99 T.C. 223, 246 n.18 (1992). In the instant setting, however, the referenced proposed regulations speak loudly as to the Commissioner's "belief" as to the forms of relief that he will consider when a taxpayer such as petitioner requests under sec. 6015 solely equitable relief.

§1.6015-2 [modified innocent spouse relief] or § 1.6015-3 [the separate liability election]."); see also Notice of Proposed Rulemaking, 66 Fed. Reg. 3891 (Jan. 17, 2001) ("If a spouse requests relief under section 6015(f) alone, relief will only be considered under that section." (Emphasis added.)). Although the majority recognizes that the Treasury Department has issued proposed regulations under section 6015, the majority makes no reference to the Secretary's interpretation of section 6015 as set forth in this portion of the proposed regulations. This portion, if finalized as proposed, will stab the heart of the majority's reasoning that:

> in every case where the taxpayer submits a request to the Commissioner for relief under section 6015, and such request includes a claim for relief under section 6015(f), the Commissioner must first examine both subsections (b) and (c) to determine whether relief is available under those subsections before determining whether relief is available under section 6015(f). [Majority op. p. 6.]

In another recent case, Lunsford v. Commissioner, 117 T.C. 183, 191 (2001) (Laro, J., dissenting), I dissented to the Court's similar refusal to recognize what I believed was a legislative mandate that taxpayers be afforded face-to-face collection due process (CDP) hearings upon all proper requests. That mandate had been recognized by the U.S. Department of Justice, the Internal Revenue Service (IRS) Office of Chief Counsel, and the IRS Office of Appeals. The Court's interpretation contrary to my belief was later eroded by the

Treasury Department's release of final regulations under section 6330, providing in relevant part that a taxpayer may demand a face-to-face CDP hearing. Sec. 301.6330-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs. In contrast to the majority, the Treasury Department has apparently recognized here that the Commissioner's assertion of a deficiency and the taxpayer's making of an affirmative election under section 6015(b) or (c) are both prerequisites to relief under those subsections and that the failure to meet either prerequisite forecloses any need to "first examine both subsections (b) and (c) to determine whether relief is available under those subsections". See also Fernandez v. Commissioner, 114 T.C. 324, 331 (2000), whereat the Court stated: "we conclude, before an individual may petition this court for review of innocent spouse relief, including relief under subsection (f), such individual must make an election under subsections (b) and/or (c)."

This Court is not a Court of unlimited jurisdiction. To the contrary, this Court is a legislatively created (Article I) Court that must acquire jurisdiction directly from Congress. Freytag v. Commissioner, 501 U.S. 868, 870 (1991); David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268, 269 (2000), affd. 22 Fed. Appx. 837 (9th Cir. 2001); see also sec. 7442. When the Court lacks jurisdiction over an issue, the Court does not have the power to decide it. Ins. Corp. of Ir., Ltd. v. Compagnie des

Bauxites de Guinee, 456 U.S. 694, 702 (1982); Williams v. Secy. of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986); Brown v. Commissioner, 78 T.C. 215, 217-218 (1982). The Court may not acquire jurisdiction upon the consent of the parties, California v. LaRue, 409 U.S. 109, 112 n.3 (1972), or through some equitable principle such as estoppel, Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18 (1951); Flight Attendants Against UAL Offset v. Commissioner, 165 F.3d 572, 578 (7th Cir. 1999). The Court's decision as to an issue over which it does not have jurisdiction is void, Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999); Steel Co. v. Citizens for Better Envt., 523 U.S. 83, 101-102 (1998), and may be challenged at any time, including upon appeal, Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, supra at 702.

Congress added section 6015 to the Code as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 685, 734, in order to expand the relief available to taxpayers from joint and several liability (joint liability) on a joint return. S. Rept. 105-174, at 55 (1998), 1998-3 C.B. 591; H. Rept. 105-364 (Part I) at 61 (1997), 1998-3 C.B. 433. Each spouse who files a joint Federal income tax return is generally responsible for the accuracy of that return and is subject to joint liability for tax deficiencies stemming therefrom. Sec. 6013(d)(3). Such is the

case even when only one of the spouses earned the wages or income shown on the return. Congress believed that relief from joint liability was difficult to obtain under the law that preceded the RRA 1998; i.e., former section 6013(e). Congress recognized that joint liability may be unjust in certain circumstances. Cheshire v. Commissioner, 282 F.3d 326, 331 (2002), affg. 115 T.C. 183 (2000).

Through section 6015, Congress authorized relief from joint liability in three distinct cases. Id. First, section 6015(b) relieves an individual of joint liability when he or she meets the five requirements set forth in section 6015(b)(1). Relief under section 6015(b)(1), which is similar to the relief available under former section 6013(e) and to which the conferees referred as modified (or sometimes expanded) "innocent spouse relief",[3] H. Conf. Rept. 105-599, at 251, 254 (1998), 1998-3 C.B.

---

[3] The congressional committee members used the shorthand "innocent spouse" to refer to an individual who qualified for relief from joint liability under former sec. 6013(e) and, in the case of the conferees and the House committee members, under its successor, sec. 6015(b). E.g., H. Conf. Rept. 105-599, at 249, 251 (1998), 1998-3 C.B. 1003, 1005; S. Rept. 105-174, at 55-56 (1998), 1998-3 C.B. 591-592; H. Rept. 105-364 (Part I) at 61-62 (1997), 1998-3 C.B. 433-434. Although former sec. 6013(e) did not actually use that term, the courts and at least one previous legislative committee did. The term "innocent spouse" was apparently spawned in Spanos v. United States, 212 F. Supp. 861 (D. Md. 1963), affd. in part, revd. in part, and remanded 323 F.2d 108 (4th Cir. 1963). There, the court described a taxpayer who had filed a joint return with her husband as an "innocent spouse" after noting that the taxpayer at hand "had no income of her own and * * * was innocent of her husband's fraudulent

(continued...)

1005, 1008, requires an affirmative election by the taxpayer, sec. 6015(a)(1), and the presence of a deficiency, e.g., sec. 6015(b)(1)(B) (joint return must contain an "understatement of tax"); sec. 6015(b)(1)(D) (factfinder must conclude as a prerequisite to modified innocent spouse relief that it is "inequitable to hold the other [petitioning spouse] individual liable for the deficiency in tax for such taxable year attributable to such understatement").  Second, section 6015(c) allows certain individuals to elect to limit their personal liability to the amount that was "properly allocable" to them. Sec. 6015(c)(1)(A).  In order to qualify for this second type of relief, which was not available under former section 6013(e) and to which the conferees referred as the "separate liability election", H. Conf. Rept. 105-599, supra at 251, 1998-3 C.B. at 1005, the taxpayers who filed the joint return must be no longer married, or be legally separated, or have been living apart for a

---

³(...continued)
failure to file a federal income tax return for the taxable year 1955 when it was due."  Id. at 862, 864.  This Court and the Court of Appeals for the Sixth Circuit later repeated the term while passing on the joint liability of a taxpayer who had filed a joint return with her spouse. E.g., Huelsman v. Commissioner, 416 F.2d 477, 479 (6th Cir. 1969), remanding T.C. Memo. 1968-95; Wenker v. Commissioner, T.C. Memo. 1966-240.  The term also appears in the legislative history accompanying the enactment of former sec. 6013(e), S. Rept. 91-1537 (1970), 1971-1 C.B. 606, and many subsequent court opinions discussing the former section, e.g., United States v. Mitchell, 403 U.S. 190, 206 (1971); Feldman v. Commissioner, 20 F.3d 1128 (11th Cir. 1994), affg. T.C. Memo. 1993-17; Kroh v. Commissioner, 98 T.C. 383 (1992) (Court reviewed).

12-month period.  Sec. 6015(c)(3)(A)(i).  Relief under section

6015(c), like relief under section 6015(b), requires an

affirmative election by the taxpayer, sec. 6015(a)(2), and the

presence of a deficiency, e.g., sec. 6015(c)(1) (an individual

who makes the separate liability election is liable for a

"deficiency which is assessed with respect to the [joint] return

* * * [in an amount not to exceed] the portion of such deficiency

properly allocable to the individual").  Third, section 6015(f)

authorizes the Secretary to grant equitable relief from joint

liability when neither of the first two types of relief is

available.  Relief under section 6015(f), which the conferees

referred to as "equitable relief", H. Conf. Rept. 105-599, supra

at 251, 1998-3 C.B. at 1005, was not available under former

section 6013(e).  In contrast with the other two types of relief,

equitable relief does not require the presence of a deficiency.

Petitioner's petition to this Court is a "stand alone"

petition, Fernandez v. Commissioner, 114 T.C. 324, 329 (2000),

that was filed under section 6015(e)(1) seeking only equitable

relief under section 6015(f).  By virtue of the fact that her

1995 joint return did not generate a deficiency, petitioner does

not qualify for, nor has she ever sought, modified innocent

spouse relief or the separate liability election under section

6015(b) and (c), respectively.  This case is the first instance

where this Court has decided whether section 6015(e) allows the

Court to determine whether a taxpayer in a nondeficiency case[4] is entitled to equitable relief under section 6015(f).  The Court has previously held that the Court has jurisdiction to decide a claim for equitable relief under section 6015(f) when the Court has jurisdiction over the proceedings by virtue of another specific grant of authority.  E.g., Fernandez v. Commissioner, supra (Court decided claim for equitable relief under section 6015(f) in a proceeding subject to the Court's jurisdiction under section 6015(e)(1) to review the Commissioner's determination as to a claim under section 6015(b) and (c)); Butler v. Commissioner, 114 T.C. 276 (2000) (Court decided claim for equitable relief under section 6015(f) in a proceeding subject to the Court's jurisdiction under section 6213(a) to redetermine a deficiency).

In order to decide the Court's jurisdiction in this case, I set my focus on the text of section 6015(e)(1) while bearing in mind the text of the statute as a whole and the statutory scheme crafted by Congress for relief from joint liability.  FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-133 (2000). I construe the relevant text with reference to its legislative

---

[4] I use the term "nondeficiency case" to refer to a case such as this where the Commissioner has not determined a deficiency against the taxpayer, the taxpayer has never filed with the Commissioner an election for relief under section 6015(b) or (c), and the taxpayer petitions the Court seeking solely equitable relief as to an underpayment of tax.

history primarily to learn the purpose of the statute and, if necessary, to resolve any ambiguity in the words prescribed in the text. Landgraf v. USI Film Prods., 511 U.S. 244 (1994); United States v. Am. Trucking Associations, Inc., 310 U.S. 534, 543-544 (1940); Allen v. Commissioner, 118 T.C. 1, 7 (2002). I apply the plain meaning of the words prescribed in the text unless I find that a word's plain meaning is inescapably ambiguous. Commissioner v. Soliman, 506 U.S. 168, 174 (1993); Garcia v. United States, 469 U.S. 70, 76 n.3 (1984); Venture Funding, Ltd. v. Commissioner, 110 T.C. 236, 241-242 (1998), affd. without published opinion 198 F.3d 248 (6th Cir. 1999); see also Ex parte Collett, 337 U.S. 55 (1949). I understand that the Court's "task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, 'that language must ordinarily be regarded as conclusive.'" Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570 (1982) (quoting Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)). I "presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Natl. Bank v. Germain, 503 U.S. 249, 253-254 (1992).[5]

---

[5] Whereas the majority opinion recognizes similar rules of statutory construction, it does so only as to its interpretation of the 2001 amendment, majority op. pp. 14-15, choosing to rest its analysis primarily on this Court's decisions in Fernandez v. Commissioner, 114 T.C. 324 (2000), and Butler v. Commissioner, 114 T.C. 276 (2000). In contrast with the case here, however,
(continued...)

I am unable to find in section 6015(e)(1) any grant of jurisdiction to the Court to decide in a nondeficiency case a request for equitable relief under section 6015(f). Section 6015(e)(1) provides in plain terms that the Court's jurisdiction rests upon (1) the assertion of a deficiency against a taxpayer, (2) the taxpayer's making of an election under section 6015(b) or (c),[6] and (3) the taxpayer's timely petitioning the Court to determine the appropriate relief under section 6015. Absent a finding that all of these requirements have been met, I conclude that the Court lacks the requisite jurisdiction to decide a claim for equitable relief under section 6015(f). When, on the other hand, all of these requirements are met, I conclude that the Court is empowered by section 6015(e)(1)(A) "to determine the appropriate relief available to the individual under this section [section 6015]".[7] That relief could include, where applicable,

---

[5](...continued)
neither of those two cases involved an election made solely under section 6015(f) or, more importantly, required that the Court look solely to sec. 6015(e) for its jurisdiction.

[6] As to this second element, the statute provides explicitly that the Court's jurisdiction attaches only to those cases where "an individual * * * elects to have subsection (b) or (c) apply". Sec. 6015(e)(1). Thus, even were the Commissioner to treat a taxpayer who did not make such an election as one who did, a treatment which as mentioned supra the Treasury Department's proposed regulations forbid, that treatment, contrary to the majority's thinking, would not be enough to meet this second element.

[7] I read the phrase "under this section" in light of the
(continued...)

modified innocent spouse relief, the separate liability election, and equitable relief.

The majority opinion rests primarily on the fact that the Court has held previously in <u>Fernandez v. Commissioner</u>, <u>supra</u>, and <u>Butler v. Commissioner</u>, <u>supra</u>, that the Court has jurisdiction to decide a claim for relief under section 6015(f). As I read the majority's opinion, those decisions compel the conclusion that we have jurisdiction in this case. I disagree. The cases of <u>Fernandez v. Commissioner</u>, <u>supra</u>, and <u>Butler v. Commissioner</u>, <u>supra</u>, are factually distinguishable from the setting at hand.[8] Although it is true that both of those cases

---

[7](...continued)
text of the statute as a whole and the statutory scheme crafted by Congress for relief from joint liability. See <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 132-133 (2000). I conclude that the phrase does not empower the Court to consider granting to any individual any form of relief available under sec. 6015 simply because the individual petitions the Court for relief from joint liability. Instead, in a stand alone proceeding such as this, Congress has allowed the Court to provide relief under sec. 6015 only to an individual described in sec. 6015(e)(1). I construe Congress's use of the term "the individual" in sec. 6015(e)(1)(A) to refer only to those individuals described in sec. 6015(e)(1); i.e., "an individual against [1] whom a deficiency has been asserted and [2] who elects to have subsection (b) or (c) apply".

[8] I also note that the version of sec. 6015(e)(1) that the Court applied in <u>Fernandez v. Commissioner</u>, <u>supra,</u> and <u>Butler v. Commissioner</u>, <u>supra</u>, has since been amended by inserting after "individual", the words "against whom a deficiency has been asserted and". Consolidated Appropriations Act, 2001 (CAA), Pub. L. 106-554, app. G, sec. 313(a)(3)(A), 114 Stat. 2763A-641 (2000). That amendment is applicable to this case in that it "shall take effect on the date of the enactment of this Act"

(continued...)

required the Court's consideration of a section 6015(f) claim for equitable relief, the fact of the matter is that neither case arose in a nondeficiency setting. The taxpayer in Butler v. Commissioner, supra, raised the section 6015(f) issue as an affirmative defense in a deficiency proceeding. Accord Estate of Wenner v. Commissioner, 116 T.C. 284 (2001) (taxpayer raised qualification under sec. 6015 as an affirmative defense in an interest abatement proceeding). The taxpayer in Fernandez v. Commissioner, supra, raised the section 6015(f) issue in connection with an election under section 6015(b) and (c) for relief from a deficiency. Petitioner, by contrast, has never had a deficiency for the relevant year and has never made an election. Petitioner simply asks the Court to grant her equitable relief from an underpayment of the tax reported on her return.

Although the legislative history to a statute is secondary when the Court can apply the plain meaning of unambiguous statutory text, I recognize that unequivocal evidence of a clear legislative intent may sometimes override a plain meaning interpretation and lead to a different result. Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., supra at 108; see also Allen v. Commissioner, 118 T.C. 1, 17 (2002). Here, the legislative

---

[8](...continued)
(Dec. 21, 2000). CAA app. G, sec. 313(f), 114 Stat. 2763A-643.

history of section 6015 supports my conclusion and conflicts with the majority's conclusion.

Section 6015 finds its roots in the House.  The House Committee on Ways and Means was concerned with the adequacy of then-present law on relief from joint liability for tax, interest, and penalties in that the relief was afforded only to individuals who qualified as innocent spouses.  The committee viewed the law as "inadequate" in that "it is inappropriate to limit innocent spouse relief only to the most egregious cases where the understatement is large and the tax position taken is grossly erroneous."  H. Rept. 105-364 (Part 1), supra at 61, 1998-3 C.B. at 433.  The committee believed that "partial innocent spouse relief should be considered in appropriate circumstances, * * * that all taxpayers should have access to the Tax Court in resolving disputes concerning their status as an innocent spouse * * * [and] that taxpayers need to be better informed of their right to apply for innocent spouse relief in appropriate cases".  Id.  The House bill made "innocent spouse status easier to obtain."  Id.  The House committee report explains the relevant parts of the House bill as follows:

> The bill eliminates all of the understatement thresholds and requires only that the understatement of tax be attributable to an erroneous (and not just a grossly, erroneous) item of the other spouse.
>
> The bill provides that innocent spouse relief may be provided on an apportioned basis.  That is, the spouse may be relieved of liability as an innocent

spouse to the extent the liability is attributable to the portion of an understatement of tax which such spouse did not know of and had no reason to know of.

The bill specifically provides that the Tax Court has jurisdiction to review any denial (or failure to rule) by the Secretary regarding an application for innocent spouse relief. * * * [Id.]

The House bill then passed to the Senate. As was true in the case of the House committee, the Senate Committee on Finance viewed the then-present law on relief from joint liability for tax, interest, and penalties as "inadequate". S. Rept. 105-174, supra at 55, 1998-3 C.B. at 591. The Senate committee believed, however, that an approach different from that taken by the House was necessary to address this concern. The Senate committee believed that "a system based on separate liabilities will provide better protection for innocent spouses than the current system * * *[,] that an electing spouse's liability should be satisfied by the payment of the tax attributable to that spouse's income and that an election to limit a spouse's liability to that amount is appropriate." Id. at 55, 1998-3 C.B. at 591. The Senate Committee on Finance explained in its report that the relevant parts of the Senate amendment were as follows:

The bill modifies the innocent spouse provisions to permit a spouse to elect to limit his or her liability for unpaid taxes on a joint return to the spouse's separate liability amount. In the case of a deficiency arising from a joint return, a spouse would be liable only to the extent items giving rise to the deficiency are allocable to the spouse. * * *

* * * * * * *

The Tax Court has jurisdiction of disputes arising from the separate liability election.  For example, a spouse who makes the separate liability election may petition the Tax Court to determine the limits on liability applicable under this provision.  * * *

* * * * * * *

The separate liability election also applies in situations where the tax shown on a joint return is not paid with the return.  In this case, the amount determined under the separate liability election equals the amount that would have been reported by the electing spouse on a separate return.  [Id. at 56-59, 1998-3 C.B. at 592-595.]

The different approaches passed by the Senate and the House as to relief from joint liability were reconciled in conference with the conferees adopting both the modified innocent spouse relief provided in the House bill and the separate liability election provided in the Senate amendment.  The conferees also agreed upon an additional form of relief that was not found in either the House bill or the Senate amendment.  The conference agreement provided that an individual who did not qualify for modified innocent spouse relief or the separate liability election could still qualify for equitable relief in appropriate situations prescribed by the Secretary.  The conference report explains the relevant parts of the conference agreement as follows:

In general

The conference agreement follows the Senate amendment with respect to deficiencies of a taxpayer who is no longer married to, is legally separated from, or has been living apart for at least 12 months from

the person with whom the taxpayer originally filed the joint return.  The conference agreement also includes the provision in the House bill expanding the circumstances in which innocent spouse relief is available.  Taxpayers, whether or not eligible to make the separate liability election, may be granted innocent spouse relief where appropriate.  In addition, the conference agreement authorizes the Secretary to provide equitable relief in appropriate situations. The conference agreement follows the House bill and the Senate amendment in establishing jurisdiction in the Tax Court over disputes arising in this area.

Deficiencies of certain taxpayers

The conference agreement follows the Senate amendment with respect to deficiencies of a taxpayer who, at the time of election, is no longer married to, is legally separated from, or has been living apart for at least 12 months from the person with whom the taxpayer originally filed the joint return.  Such taxpayers may elect to limit their liability for any deficiency limited to the portion of the deficiency that is attributable to items allocable to the taxpayer.

*    *    *    *    *    *    *

Other deficiencies

The conference agreement also includes the provision in the House bill modifying innocent spouse relief.  Taxpayers who do not make the separate liability election may be eligible for innocent spouse relief. * * *

Other circumstances, including tax shown on a return but not paid

The conference agreement does not include the portion of the Senate amendment that could provide relief in situations where tax was shown on a joint return, but not paid with the return.  The conferees intend that the Secretary will consider using the grant of authority to provide equitable relief in appropriate situations to avoid the inequitable treatment of spouses in such situations. * * *

The conferees do not intend to limit the use of the Secretary's authority to provide equitable relief to situations where tax is shown on a return but not paid. The conferees intend that such authority be used where, taking into account all the facts and circumstances, it is inequitable to hold an individual liable for all or part of any unpaid tax or deficiency arising from a joint return. The conferees intend that relief be available where there is both an understatement and an underpayment of tax.

Procedural rules

The conference agreement follows the House bill and the Senate amendment with respect to procedural rules, including the jurisdiction of the Tax Court to review matters relating to this provision. * * *

Effective date

The conference agreement follows the Senate amendment. The separate liability election, expanded innocent spouse relief and authority to provide equitable relief all apply to liabilities for tax arising after the date of enactment, as well as any liability for tax arising on or before the date of enactment that remains unpaid on the date of enactment. * * * [H. Conf. Rept. 105-599, supra at 251-255, 1998-3 C.B. at 1005-1009; footnote omitted.]

In sum, the conference report highlights that Congress intended that three distinct types of relief from joint liability be available under section 6015; namely, the modified innocent spouse relief provided in the House bill, the separate liability election provided in the Senate amendment, and the equitable relief provided in the conference agreement.[9] The conference report also highlights that the Court's jurisdiction to review

_____

[9] The proposed income tax regulations under sec. 6015 also highlight this point. See 66 Fed. Reg. 3888 (Jan. 17, 2001).

those types of relief is limited to the jurisdictional powers granted to the Court in the House bill and in the Senate amendment. Because neither of those documents empowered the Court to decide a matter stemming from a petition requesting equitable relief under section 6015(f), I consider it only natural to conclude that section 6015 also does not contain that jurisdiction in a nondeficiency case. To be sure, the fact that the conferees' equitable relief provision was not a part of either the House bill or the Senate amendment negates the majority's conclusion that the Court's jurisdiction to review a claim for equitable relief under section 6015(f) is found in both the House bill and in the Senate amendment.

I find additional support for my conclusion in the general explanation of the RRA 1998 as set forth in the Staff of Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted in 1998 (J. Comm. Print 1998), 1998-4 C.B. 543. Although that general explanation is not part of the RRA 1998's legislative history, see Estate of Hutchinson v. Commissioner, 765 F.2d 665, 669-670 (7th Cir. 1985), affg. T.C. Memo. 1984-55; Condor Intl., Inc. v. Commissioner, 98 T.C. 203, 227 (1992), I respect it as a document that was prepared in connection with the legislative process by individuals who were intimately involved in that process. Estate of Wallace v. Commissioner, 965 F.2d 1038, 1050-1051 n.15 (11th Cir. 1992), affg. 95 T.C. 525 (1990). My

respect for the joint committee's understanding of a statute is greatest where, as here, the understanding is fully supported by corroboration in the legislative history.  Estate of Hutchinson v. Commissioner, supra at 669-670; Zinniel v. Commissioner, 89 T.C. 357, 367 (1987), affd. 883 F.2d 1350 (7th Cir. 1989). Cf. Allen v. Commissioner, supra at 15 (joint committee's explanation of certain provisions of the alternative minimum tax regime were entitled to little respect given the lack of corroboration in the legislative history).  Consistent with my understanding of the jurisdictional issue, the joint committee recognized in its report that section 6015 provides taxpayers with three possible types of relief from joint liability; i.e., modified innocent spouse relief, the separate liability election, and equitable relief.  Moreover, like me, the joint committee understood that this Court is empowered to decide in a stand-alone petition as an independent action only the first two types of relief.  In order to decide a claim to equitable relief, therefore, the joint committee's explanation indicates that the Court must otherwise have jurisdiction over the underlying case by virtue of another grant of authority; e.g., by way of the petition in Butler v. Commissioner, 114 T.C. at 288 (2000), to redetermine a deficiency under section 6213(a), or by way of the petition in Fernandez v. Commissioner, 114 T.C. 324 (2000), to

review a claim under section 6015(b) and (c) for relief from a
deficiency.

The most recent amendment to section 6015(e)(1) also is
relevant to my conclusion. Through the Consolidated
Appropriations Act, 2001 (CAA), Pub. L. 106-554, app. G, sec.
313(a)(3)(A), 114 Stat. 2763A-641 (2000), Congress made a
technical correction to section 6015(e)(1) by inserting after the
word "individual", the phrase "against whom a deficiency has been
asserted and". This technical correction was made in conference,
with no counterpart in either the House or the Senate. The
conference report reinforces a plain reading of the inserted
phrase to require the determination of a deficiency as a
prerequisite to the Court's jurisdiction under section
6015(e)(1). The report enunciates that the main focus of the
statute is on relief from deficiencies and that the equitable
relief from underpayments of tax is a narrowly tailored provision
that is not subject to the same avenues of judicial (Tax Court)
review.[10] The conference report states:

---

[10] In fact, the Court's inability to entertain a claim for
equitable relief under sec. 6015(f) in a nondeficiency case
parallels the Court's jurisdiction to decide a taxpayer's income
tax liability under sec. 6213(a). See Hannan v. Commissioner,
52 T.C. 787, 791 (1969). Given the firmly established terrain as
to the Court's jurisdiction to decide income tax liabilities in
general, I do not find it surprising that Congress chose through
sec. 6015(e)(1) not to give the Court jurisdiction to decide a
claim for equitable relief under sec. 6015(f), absent the
Commissioner's determination of a deficiency.

Timing of request for relief.--Confusion currently exists as to the appropriate point at which a request for innocent spouse relief should be made by the taxpayer and considered by the IRS. Some have read the statute to prohibit consideration by the IRS of requests for relief until after an assessment has been made, i.e., after the examination has been concluded, and if challenged, judicially determined. Others have read the statute to permit claims for relief from deficiencies to be made upon the filing of the return before any preliminary determination as to whether a deficiency exists or whether the return will be examined. The consideration of innocent spouse relief requires that the IRS focus on the particular items causing a deficiency; until such items are identified, the IRS cannot consider these claims. Congress did not intend that taxpayers be prohibited from seeking innocent spouse relief until after an assessment has been made; <u>Congress intended the proper time to raise and have the IRS consider a claim to be at the same point where a deficiency is being considered and asserted by the IRS. This is the least disruptive for both the taxpayer and the IRS since it allows both to focus on the innocent spouse issue while also focusing on the items that might cause a deficiency. It also permits every issue, including the innocent spouse issue, to be resolved in single administrative and judicial process. The bill clarifies the intended time by permitting the election under (b) and (c) to be made at any point after a deficiency has been asserted by the IRS</u>. A deficiency is considered to have been asserted by the IRS at the time the IRS states that additional taxes may be owed. Most commonly, this occurs during the Examination process. It does not require an assessment to have been made, nor does it require the exhaustion of administrative remedies in order for a taxpayer to be permitted to request innocent spouse relief. [H. Conf. Rept. 106-1004, at 386-387 (2001); emphasis added.]

For the foregoing reasons, I dissent.

WHALEN and FOLEY, <u>JJ.</u>, agree with this dissenting opinion.